**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**John Hill,**

**Plaintiff,**

**v.**

**Jon Waters, *et al.*,**

**Defendants.**

**Case No. 2:17-cv-532**
**Case No. 2:17-mc-003**
**Judge Michael H. Watson**
**Magistrate Judge Vascura**

# OPINION AND ORDER

John Hill ("Plaintiff"), proceeding *pro se*, brings this copyright infringement action against The Ohio State University Marching Band ("Marching Band"); Jon Waters, former Assistant Director and subsequent Director of the Marching Band ("Waters"); Matt Reed, former student member of the Marching Band ("Reed"); Jerry L. Canterbury, former student member of the Marching Band ("Canterbury"); Dot the i Creative ("Dot the i"); Matt Adams, owner of Dot the i Creative ("Adams"); Apple iTunes ("iTunes"); Facebook; and Jane and John Does (collectively, "Defendants"). Plaintiff seeks damages and injunctive relief on his claims of direct and vicarious copyright infringement. Before the Court are six separate motions to dismiss filed by all Defendants: the Marching Band's, Reed's, and Waters' motions to dismiss for lack of jurisdiction; and all Defendants' motions to dismiss for failure to state a claim. ECF Nos. 24, 30, 33, 35, 36, 39. The motions are fully briefed and ripe for review. For the following reasons, the motions are **GRANTED**.

## I. BACKGROUND

At the outset, the Court notes that Plaintiff's Complaint is particularly difficult to decipher. Plaintiff identifies himself as the owner of "JH Designs," the owner of www.DrumCorpsKoozies.com, and a former member of the Marching Band from 1981 to 1984. Compl., ECF No. 4, PAGEID # 140. He contends that he is the holder of eleven different copyrights, including what he calls a "marching band uniform" design and a "drum major uniform" design. *Id.* at PAGEID ## 138–39; *see also* Plaintiff's List of Copyrights, ECF No. 1-10. Apparently, sometime in the year 1986, Plaintiff registered one or more of those copyrights. Compl. ¶ 12. That same year, Plaintiff allegedly shared at least one of his designs with Waters and other Ohio State staff members over the course of one or more meetings with them. *See id.* ¶¶ 12, 25.

Plaintiff avers that, during the years 2014 and 2016, he discovered "infringements" of one or more said copyrights on various websites, including Facebook, Twitter, and the Marching Band's website. *See generally id.* Additionally, Plaintiff alleges that a specific Marching Band mobile app, which appears to have launched in the year 2014, uses one of his designs that "has four or more copyrights associated" with it alone. *Id.* at PAGEID # 138. Canterbury, Adams, and others not named in this lawsuit are among those who purportedly posted the "infringing" materials to Facebook. *Id.* ¶¶ 23, 26, 33, 45–46, 59–60. Plaintiff does not describe which "design" or copyright was infringed or how Defendants' infringed it; he merely asserts that he discovered

"infringements" of his "designs" or copyrights on Facebook and other websites or social media outlets and that Defendants are responsible for said "infringements." *See generally* Compl., ECF No. 4.

Plaintiff now brings claims against Defendants for direct copyright infringement, vicarious copyright infringement, and violations of 17 U.S.C. § 106A. *Id.* at PAGEID # 152. He seeks damages that include the amount of Defendants' profits, or, alternatively, the maximum amount of statutory damages allowed by law. *Id.* Plaintiff also requests a permanent injunction preventing Defendants from directly infringing on his copyrighted works in any manner, pre-judgment and post-judgment interest, and attorneys' fees and costs for bringing this action. *Id.*

Finally, it should be noted that this is not the first copyright infringement suit filed by Plaintiff against Ohio State. Both of Plaintiff's prior lawsuits were dismissed, at least in part, for failure to state a claim. *See Hill v. Ohio State Univ. T & L*, No. 2:12-cv-984, 2013 WL 2354069 (S.D. Ohio May 29, 2013); *Hill v. Ohio State Univ. Marching Band*, No. 2015-00809, 2016 WL 641157 (Ohio Ct. Cl. Feb. 9, 2016).

## II. STANDARD OF REVIEW

A claim survives a motion to dismiss pursuant to Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted). A court must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 557. Thus,

[1] Defendants aver that the Sixth Circuit imposed a heightened pleading standard to copyright infringement claims in *National Business Development Services, Inc. v. American Credit Education and Consulting Inc.*, 299 F. App'x 509 (6th Cir. 2008). The Undersigned concludes, however, that, while *National Business Development* acknowledged that copyright infringement claims are subject to abuse, "a careful reading of [that case] belies the claim that copyright infringement claims are subject to a special pleading standard in this Circuit . . . . In the end, . . . [it] applied the very same plausibility standard articulated by the Supreme Court in *Twombly* and *Iqbal*." *Gen. Motors LLC v. Dorman Prods., Inc.*, No. 15-12917, 2016 WL 5661578, at **3–4 (E.D. Mich. Sept. 30, 2016); *see Nat'l Bus. Dev. Servs.*, 299 F. App'x at 512 (stating that a pleading must show "plausible grounds" for relief). That same, familiar plausibility standard applies to the present case.

"something beyond the mere possibility of [relief] must be alleged. . . ." *Id.* at 557–58 (internal citations omitted). "While *pro se* pleadings are to be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers," they must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Huber v. Ohio*, 920 F. Supp. 2d 858, 860 (S.D. Ohio 2012) (internal quotation marks and citations omitted).

Finally, the Court may consider "'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (quoting *Basset v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

## III. ANALYSIS

### A. Subject Matter Jurisdiction

When, as here, dismissal is sought under both Rule 12(b)(1) and 12(b)(6), the Court "is bound to consider the Rule 12(b)(1) motion first, because the Rule 12(b)(6) motion will become moot if the Court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

As an initial matter, the Marching Band contends that it should be dismissed as a party on the ground that, as a subdivision of The Ohio State University ("Ohio State" or the "University"), it is not a separate entity capable of

being sued. The Marching Band further avers that even if Plaintiff's claims against the Marching Band could be construed as claims against the University itself, his claims should be dismissed for lack of subject matter jurisdiction.

The Marching Band's arguments are well taken. First, the Marching Band is a subdivision of Ohio State, which is not capable of being sued independently of Ohio State. *See Winkle v. Loranger*, No. 3:14-cv-020, 2014 WL 1573654, at *4 (S.D. Ohio Apr. 17, 2014) (Merz, Mag. J.), *recommendation adopted by Winkle v. Loranger*, No. 3:14-cv-020, 2014 WL 1884324 (S.D. Ohio May 9, 2014); *see also Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1080 (S.D. Ohio 1987). On this basis alone, therefore, Plaintiff's claims against the Marching Band should be dismissed.

Even to the extent Plaintiff's claims against the Marching Band may be construed as claims against the University itself, however, the Court agrees that those claims must be dismissed for lack of subject matter jurisdiction. Any of Plaintiff's claims against the University are barred by the Eleventh Amendment, which prohibits private citizens from suing a state or its instrumentality in federal court unless Congress abrogates the state's sovereign immunity or the state consents to suit. *Bd. of Trustees v. Garrett*, 531 U.S. 356, 363 (2001); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (abrogated on other grounds). As this Court has previously found, Ohio State is an instrumentality of the state of Ohio and is therefore immune from suit in federal court. *Middleton v. Ohio State*

*Univ.*, No. 2:15-cv-2997, 2016 WL 224029, at *2 (Jan. 19, 2016) (citations omitted).

Neither party disputes that Ohio State does not consent to suit in this Court. But Plaintiff asserts that Congress abrogated state sovereign immunity from suit for copyright infringement through the Copyright Remedy Clarification Act ("CRCA"), 17 U.S.C. § 511(a). The CRCA states that

> Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States . . . from suit in Federal court by any person . . . for a violation of any of the exclusive rights of a copyright owner provided by sections 106 through 122 . . . or for any other violation under this title.

This Court has previously concluded, however, that the CRCA does not in fact abrogate a state's sovereign immunity, because "Congress did not act pursuant to a valid grant of constitutional authority when enacting the CRCA. Congress cannot validly abrogate a state's immunity from suit by passing legislation pursuant to Article I of the Constitution." *Campinha-Bacote v. Regents of the Univ. of Mich.*, No. 1:15-cv-330, 2016 WL 223408, at *3 (S.D. Ohio Jan. 19, 2016) (Barret, J.) (citing *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 636 (1999), which held that Congress could not abrogate a state's sovereign immunity under the Patent Remedy Act under the Commerce Clause or the Patent Clause because both arise under Article I of the Constitution). Numerous other courts have similarly held that the CRCA was

passed pursuant to Article I and therefore does not validly abrogate the states' sovereign immunity. *See id.* (collecting cases).

Because the CRCA does not validly abrogate the state's sovereign immunity, Ohio State is not subject to suit in this Court. Accordingly, Plaintiff's claims against the Marching Band and Ohio State (to the extent he is bringing claims against the University) are **DISMISSED** for lack of subject matter jurisdiction.

**B. Failure to State a Claim**

All Defendants contend that Plaintiff's Complaint should be dismissed because its allegations fail to plausibly state a claim for direct or contributory copyright infringement. The Court agrees.[2]

**1. Count I: Direct Copyright Infringement**

Plaintiff brings direct copyright infringement claims against the Marching Band, Waters, Adams, Reed, and Canterbury.

Copyright owners possess the exclusive rights to reproduce, prepare derivative works from, distribute, and publicly perform or display a copyrighted work. 17 U.S.C. § 106. The owner of a copyright may "institute an action for any infringement of that particular right." 17 U.S.C. § 501(b). "A plaintiff may establish a claim of copyright infringement by showing (1) ownership of a valid copyright . . . and (2) that the defendant copied protectable elements of the

[2] Even if the Marching Band/Ohio State is not entitled to sovereign immunity, Plaintiff nevertheless fails to state a claim against the same.

work." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (citations omitted). The first prong tests the originality and non-functionality of the work, which are presumptively established by registration of the copyright. *Id.* (citation omitted). The second prong tests whether any copying occurred and whether the copied portions were entitled to copyright protection. *Id.*

Falling far short of the plausibility standard, Plaintiff's allegations leave the Court, and Defendants, taking its best guess at what they mean. Plaintiff's allegations jump from one design, date, and Defendant to another without ever landing on any particular copyrighted design that was actually copied by any specific Defendant on any particular date. Plaintiff alleges in one paragraph, for instance, that, in 1986, he shared "privileged information" concerning his "koozie products" with Waters and other Ohio State staff members, who took "a nonchalant attitude towards [Plaintiff's] business and copyright designs and let[] Matt Reed and Matt Adams infringe upon [Plaintiff's] copyrights." Compl. ¶ 25. Elsewhere, Plaintiff alleges that the Marching Band's mobile app—purportedly designed by Reed and "uploaded" (presumably to Apple iTunes) by Adams—uses one of Plaintiff's designs that "has four or more copyrights associated with [it] alone." *Id.* at PAGEID # 138; ¶¶ 28–42. In another portion of his Complaint, Plaintiff asserts that he "found . . . another infringement on [his] copyrights" on Facebook and on the Marching Band's webpage in August 2016. *Id.* at PAGEID # 139. Later, Plaintiff avers that, from December 2016 until sometime in January

2017, individuals unknown to Plaintiff allegedly infringed upon his "'Marching Band Uniform Design' and the University 'koozie' 'Uniform Designs.'" *Id.* ¶ 58; PAGEID # 139 (averring that he "supplied a subpoena on Jan. 20th, 2017, . . . to find out who the infringer(s) were"). Other alleged infringements to Plaintiff's copyrights arise from unidentified posts—including those containing "certain logos," *id.* ¶ 89, or, apparently, pictures of Marching Band uniforms, *id.* ¶ 60—to Facebook, Apple iTunes, Twitter, Tumblr, LinkedIn, Google Plus, and the Marching Band's website by individuals both named and unnamed in Plaintiff's Complaint. *See id.* ¶¶ 23, 26, 33, 45–46, 59–60.

These allegations fail to plausibly state that any named Defendant copied a protected element of Plaintiff's copyrighted work.

First, Plaintiff fails to identify what protected element of his work was in fact copied by any Defendant. In his response brief, Plaintiff asserts generally that Defendants "copied all of his copyrights," *e.g.* Resp. 11, ECF No. 37 (emphasis in original), but this does nothing to advance Plaintiff's case. At bottom, Plaintiff fails to ever specify which protected elements of his works were infringed or what particular actions by Defendants constitute impermissible copying of those protected elements, let alone which Defendant committed such copying. He merely asserts that he discovered photos or logos online that he believes constitute "infringements" of his copyrights. *See generally* Compl., ECF No. 4. This is nothing but a legal conclusion.

The best the Court can surmise from Plaintiff's Complaint, exhibits, and response briefs in opposition to the motions to dismiss is that Plaintiff believes he owns copyrights in the Marching Band's decades-old, and currently used, uniform designs (both the general uniform design for all band members as well as the drum major uniform design), and that any use of those designs infringes on Plaintiff's copyrights. For instance, Plaintiff attaches copyright registration forms to his complaint, to which are attached several pictures of the Marching Band's uniforms and a drink koozie that resembles the Marching Band's drum major uniform design. Copyright Registration, ECF No. 4-9. Plaintiff also attaches correspondence between him and Facebook concerning a news report posted to Facebook that Plaintiff believed infringed his copyright(s). Facebook Correspondence, ECF No. 4-6. The only image included in the news report is a photograph of Marching Band members in uniform, *see id.*, implying that it is the use of the uniform itself that Plaintiff believes infringes on one or more of his copyrighted designs. Indeed, in Plaintiff's response briefs he asserts that, notwithstanding the fact that the Marching Band may have been using its current uniform designs for decades, Plaintiff was the first to formally *register* the designs with the United States Copyright Office and therefore is entitled to exclusive use of the designs. *See, e.g.*, Resp. 10, ECF No. 38 ("[T]he two 'designs' have been in 'use' since 1952 . . . [but] the first to copyright them is me, Mr. John Hill/JH Designs/Hill T's. I am the first one, to copyright them. I have not been granted the same opportunities as the infringers <u>to make money</u> with them. I have been

denied those opportunities."). Thus, while the Complaint is far from clear, it appears Plaintiff is arguing, at least in part, that Defendants are infringing on his copyright in the Marching Band's uniform designs.

Plaintiff cannot, however, state a claim for direct or vicarious copyright infringement against any Defendant based on the Marching Band's uniform designs. The Court takes judicial notice pursuant to Federal Rule of Evidence 201 that the Marching Band's current uniform designs have been in use since the 1950s. *See* Fed. R. Ev. 201(b)(1) (stating that a court may take judicial notice of a fact that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction). Plaintiff did not register the copyrights at issue in this case until 1986. Compl. ¶ 12; Copyright Registration, ECF No. 4-9. Because any copyright in the design of those uniforms vested initially in their author, 17 U.S.C. §§ 201, 408(a), and because Plaintiff nowhere alleges that he authored the designs in which he purports to copyright, Plaintiff cannot state a claim for copyright infringement of those designs merely by alleging that he was the first to formally register the designs with the Copyright Office. Accordingly, to the extent Plaintiff's claims are based on the use of the Marching Band's uniform designs (including its drum major uniform design), those claims fail. In other words, it is apparent from the face of Plaintiff's Complaint that he has no valid copyright in the Marching Band uniform designs and, therefore, his allegations fail to establish even the first element of a copyright infringement claim. *See Lexmark Int'l*, 387 F.3d at 534.

Nor do Plaintiff's allegations satisfy the second element of a copyright infringement claim, because Plaintiff fails to identify which of Plaintiff's protected work was copied by whom and when. Accordingly, Plaintiff's direct infringement claims (Count I) are **DISMISSED** for failure to state a claim.

**2. Count II: Vicarious Copyright Infringement**

Plaintiff apparently brings claims of vicarious copyright infringement against all Defendants. Compl. ¶¶ 87, 91–92. Plaintiff alleges that he brought various copyright infringements to the attention of Facebook and Apple iTunes on multiple occasions. *Id.* ¶¶ 28, 34–41, 47–57. He apparently received unsatisfactory responses, ECF Nos. 4-3, 4-6, and alleges that Facebook, Apple iTunes, and the Marching Band are vicariously and/or contributorily liable for allowing Defendants' alleged infringements to continue. He additionally alleges that, because the Marching Band knew of "repeated infringements by identified individuals occurring through its network and as well as other website," but nevertheless "induc[ed], caus[ed] or materially contribut[ed] to" said infringements, the Marching Band is liable for contributory or vicarious infringement as well. *Id.* ¶ 61. But because Plaintiff failed to state a claim for direct copyright infringement, he likewise fails to state a claim for vicarious or contributory infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (indicating that liability for vicarious or contributory infringement does not lie where no direct infringement has occurred).

Plaintiff therefore fails to state a plausible claim for relief for vicarious infringement against any Defendant; accordingly, his vicarious infringement claims (Count II) are **DISMISSED**.[3]

**3. Violations of 17 U.S.C. § 106A**

Finally, Plaintiff appears to be attempting to bring claims against various Defendants for violations of 17 U.S.C. § 106A as well. In his Complaint, Plaintiff quotes portions of § 106A(a) that set forth the rights possessed by authors of visual artwork and asserts that "Jon Waters, Matt Reed, Matt Adams, Jerry Canterbury have denied [him] those rights. To claim authorship to that work, to prevent the use of my name, to have the right to prevent the use of my name in a work of visual art in the event of a distortion, mutilation, or other modification, which would be prejudicial to my honor . . . etc." Compl. ¶ 69–70 (ellipses in original). Additionally, in his brief in response to Facebook's motion to dismiss, Plaintiff attempts to incorporate additional paragraphs into his Complaint, which generally allege that various Defendants violated his rights under 17 U.S.C. § 106A. Resp. 7, ECF No. 40.

Plaintiff neither alleges that he is the author of a work of visual art nor that Defendants have committed any specific acts that would violate his rights pursuant to 17 U.S.C. § 106A even if had authored a work of visual art. Accordingly, to the extent Plaintiff attempts to bring claims against any Defendant

---

[3] Because the Court finds that Plaintiff fails to state a plausible claim for relief, it need not address Reed's or Waters' arguments related to qualified immunity, ECF Nos. 24, 30.

for violations of 17 U.S.C. § 106A, those claims are also **DISMISSED** for failure to state a claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss and **DISMISSES** Plaintiff's Complaint. The Clerk is **DIRECTED** to terminate ECF Nos. 24, 30, 33, 35, 36, and 39 and to terminate this and the related case, 2:17-mc-003.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**